|  |  |
|---|---|
|  | **Hearing Date & Time**<br>August 12, 2016 @ 10:00 am |
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------------X |  |
|  | Chapter 11 |
| In Re: |  |
| **CHITTUR & ASSOCIATES, PC,** | Case No.  16-22704 (RDD) |
| Debtor. |  |
| ------------------------------------------------------------X |  |

## MEMORANDUM OF LAW IN SUPPORT OF DEBTOR'S CROSS-MOTION TO PERMIT RETURN OF FUNDS TO DEBTOR

| | |
|---|---|
| Dated:    August 4, 2016 | **Shafferman & Feldman LLP**<br>137 Fifth Avenue, 9th Floor<br>New York, New York 10010<br>Telephone (212) 509-1802<br>Fax (212) 509-1831<br>Email:  joel@shafeldlaw.com<br><br>Attorneys for Debtor |

PRELIMINARY STATEMENT

1. Debtor cross-moves for an order directing return of Debtor's $158,592.76 on deposit with the N.Y. City Department of Finance ("Funds") to meet Debtor's ongoing expenses.

2. Under Section 541 of Title 11 of the United States Code (the "Bankruptcy Code"), the Funds are part of Debtor's Estate. Debtor is a small, 2-lawyer law firm that has run into a temporary cash flow crunch. The Debtor filed its Chapter 11 case to obtain a "breathing spell" from creditors, which is the very purpose of title 11.

3. As detailed in the accompanying Chittur Declaration, Debtor is a viable, ongoing business, with over 100 cases where it anticipates contingent fees. While the date, time, and amount of such fees are uncertain, obviously, Debtor has to continue working these cases in order to recover such contingent fees.[1] For this purpose, Debtor requires working capital to meet ongoing expenses. The Funds would provide such needed working capital. Indeed, absent such working capital, Debtor would be unable to continue serving its clients and/or continue in business. That would severely harm hundreds of persons, including Debtor's clients as well as *all* creditors herein.

4. Debtor intends to reorganize, and will submit a reorganization plan. However, Debtor's principal, Mr. Chittur, is facing serious medical challenges, and is

---

[1] For example, by an order dated July 13, 2016, in *Northern Leasing v. Kollars*, N.Y. City Civ. Ct. (N.Y. Co.), I. No. 14350/2007, the City Civil Court awarded Defendants therein, represented by Debtor, $116,592.09 in attorneys' fees and expenses; this was atop $200,000 already awarded as compensatory damages to those Defendants. The compensatory damages award is under appeal, but Debtor expects it to be affirmed on appeal. Debtor has moved to dismiss that appeal on grounds of abandonment.

1

abroad resolving them. As a result, he does not currently have access to all the documents and information necessary to formulate such a plan. Mr. Chittur expects to surmount his medical challenges in the next three months, and return fully recuperated to New York, whereupon a reorganization plan will be submitted.[2]

5. Accordingly, the Court should enter an order directing return of the Funds to the Debtor, which Funds will obviously be expended under supervision of this Court.

## ARGUMENT

Debtor's Motion Should Be Granted

- *The Funds Are Debtor's Property, and Debtor Should Be Granted Possession Thereof*

6. As explained in the memo in opposition to Landlords' motion, under N.Y.U.C.C. §9-312(b)(3) Landlords have no "security interest" in the Funds, and in any event, Landlords are barred by Judicial Estoppel from disputing Debtor's ownership of the Funds. The Funds belong to the Debtor.[3]

---

[2]Mr. Chittur has avoided documenting these serious medical challenges in the public record herein. However, all necessary details will be provided promptly to the Court for *in camera* review, if the Court so requests.

[3]Under the Bankruptcy Code, "property of the estate includes '[e]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative." *In re S. Side House, LLC*, 474 B.R. 391, 402 (Bankr. E.D.N.Y. 2012) (*quoting Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir.2008).

> Under § 541(a)(1), the filing of a petition in bankruptcy creates an estate consisting of "all legal or equitable interests of the debtor in property as of the commencement of the case." The phrase "all legal or equitable interests of the debtor in property" has been given the broadest possible interpretation, . .
> Further, the 'legal or equitable interests' of a debtor have been held to encompass an interest that is strictly contingent. *See, e.g., In re*

2

7. Landlords concede, as they must, that Debtor retained a "reversionary interest" in the Funds, LM6 (*citing In re Keene*, 162 B.R. 935 and other cases). Thus, on May 24, 2016 - the date Debtor filed for bankruptcy - Debtor indisputably had this interest in the Funds, because Debtor's appeal was still pending and not "complete," 162 B.R. 935. *See also In re Thermoview Indus., Inc.*, 358 B.R. 330, 333–34 (Bankr. W.D. Ky. 2007), *opinion reinstated and aff'd sub nom. ThermoView Indus., Inc. v. Clemmens*, 2008 WL 906221 (W.D. Ky. Mar. 31, 2008) ("If at the time of filing of the petition the appellate process has not been concluded, the debtor still has an interest in the supersedeas bond cognizable under Section 541 of the Bankruptcy Code," citation omitted). Indeed, the City Civil Court rejected Landlords' request for seizure of the Funds on this very ground. CX7. The Funds became the property of the Debtor's Estate in Bankruptcy. Accordingly, Debtor is entitled to possession of the Funds.

- *Debtor Is an Ongoing Business, and Needs the Funds For Working Capital*

8. Debtor is, and has been for over 15 years, a successful 2-lawyer law firm. This is clear from Debtor's portfolio of cases, as detailed in the Chittur Declaration.

---

*Greer Stump Plumbing, Inc.*, 9 B.R. 181, 183–85 (Bkrtcy.Ariz.1981); *cf. In re McConaghy,* 15 B.R. 480, 481 (Bkrtcy.E.D.Va.1981). *See also Segal v. Rochelle,* 382 U.S. 375, 379–81, 86 S.Ct. 511, 514–15, 15 L.Ed.2d 428 (1966) (ruling under § 70a of the Bankruptcy Act of 1898 that debtor's interest in tax refunds that might be generated through tax carry-backs constitutes property of debtor even though interest is contingent).

*In re Brown*, 734 F.2d 119, 123 (2d Cir. 1984). Given this "the broadest possible interpretation" of property under Section 541, *In re MF Glob. Inc.*, 531 B.R. 424, 438 (Bankr. S.D.N.Y. 2015), there can be no serious question that the Funds are Debtor's property.

3

9. Debtor has two lawsuits pending,[4] seeking to recover over $1.5 million in arrears of attorneys' fees and expenses from former clients for services rendered. Those defendants have filed counterclaims, but Debtor is expected to prevail thereon.

10. Debtor also represents plaintiffs in four major class actions: In one,[5] Debtor's principal has been appointed Class Counsel and a nationwide class of over 1.2 million has been certified and notified. In the second,[6] *nisi prius* denied class certification, which denial is under appeal and expected to be reversed. Certification proceedings are yet to commence in two others[7].

11. In addition, Debtor represents claimants with fee-shifting claims in over 100 cases in federal, State, and City Courts in New York. In one such typical case which went to trial after 10 years of litigation, *Northern Leasing v. Kollars*, N.Y. City Civ. Ct. (N.Y. Co.), I. No. 14350/2007, Debtor obtained damages of $200,000,[8] in addition to an attorneys' fee award of $116,592.09. That Court's observations while making the fee award are significant for present purposes:

---

[4]*Chittur & Associates, P.C., v Bonadio*, NY Supreme, Westchester County, No. 57824/2015; *Chittur & Associates, P.C. v Shaw*, NY Supreme, Westchester County, No. 60277/2015.

[5]*Pludeman v. Northern Leasing Systems*, 140 A.D.3d 556 (1st Dep't 2016).

[6]*Aldrich v. Northern Leasing Systems, Inc.*, I. No. 602503/2007 (N.Y. Sup., N.Y Co.).

[7]*Venkataram v. Bureau of Prisons*, I. No. 1:16-cv-23044 (U.S. Dist. Ct. S.D. Fla); *In re: American Honda Motor Co., Inc., CR-V Vibration Marketing and Sales Practices Litigation* (*Kogan v Honda*, MDL No. 2661), No. 2:15-md-02661-MHW-EPD (U.S. Dist. Ct. S.D. Ohio).

[8]The Jury had awarded $1.125 million, but the Court reduced it to $200,000.

4

> Although Mr. Chittur operates essentially a two-attorney law firm with limited staffing and an office outside of New York City, . . . his credentials and experience demonstrate a commanding fee. Mr. Chittur is a Harvard law graduate, he has over 38 years of complex commercial litigation experience and his work on several other cases involving similar facts in state and federal courts and class actions separate him as one of the leading attorneys in this field. . . Also, after a decade of contentious litigation, the unique legal and factual issues involved in this case, including the fact that Defendants prevailed on what could possibly be the first jury trial of this kind in this court is commendable.

CX1, Order of July 13, 2016, at 21.

12. In addition, Mr. Chittur is often retained as a consultant in transnational disputes due to his unique qualifications: he has advanced degrees in law from top law schools in two different countries (India and U.S.), and is (and has been) a duly licensed practicing lawyer in India and New York.

13. Unfortunately, Debtor faces a cash flow crunch due to the serious medical challenges faced by Mr. Chittur which are expected to be fully resolved in the next few months, and Landlords' harassment.

14. In sum, this is the paradigmatic case for working capital where Debtor is a very viable business but needs "a breathing spell from [its] creditors." *In re Ionosphere Clubs, Inc.*, 922 F.2d at 989.

- *The Working Capital Will Permit Debtor to Continue In Business*

15. Debtor's projected monthly expenses total $42,000. This includes compensation for Debtor's meager staff of three so that they can continue working for Debtor and move the cases to recovery instead of seeking alternative sources of livelihood.

5

16. As this Court is aware, law firms that function on contingent fee arrangements have an ebb and flow of revenue, and recurrently face a "feast or famine" situation which they tide over through personal financing. Debtor is no exception; during lean times, Mr. Chittur has been hitherto financing Debtor's operations out of his personal funds.

17. But Landlords' entry of the duplicative personal judgment against Mr. Chittur has made this impossible. Further, for several months now, he and his wife have not received their full salary. They now face personal problems such as foreclosure, and it is important that Mr. Chittur be able to continue working the cases for the benefit of Debtor, its creditors, and its clients.

- *Debtor's Lack of Working Capital Would Severely Impact Hundreds of Debtor's Clients, as Well as Debtor's Creditors*

18. As detailed in the accompanying objection to Landlords' motion to vacate the automatic stay and for related relief, Debtor is facing a severe cash flow crunch. If it is unable to get working capital, Debtor would not be able to continue prosecuting claims of its clients, and would have to withdraw from representing them. Most of Debtor's clients are out-of-State residents. Given the type of claims and the stage of litigation, it is highly unlikely that they could represent themselves and/or obtain another competent lawyer to represent them. Thus, Debtor's withdrawal would result in a severe adverse effect on these persons, and compromise their rights significantly.

19. Further, Debtor's inability to litigate its cases would dry up its potential income sources. That could only be detrimental to Debtor's creditors. It is therefore just,

6

necessary and proper that Debtor be permitted access to its own Funds and keep its doors open.

## CONCLUSION

20. The Funds belong to Debtor. Debtor is an ongoing business, a law firm which is facing a severe cash flow crunch, caused by Landlords' aggressive demand for more and more attorneys' fees, by Landlords' harassing Debtor with multiple proceedings and preventing Debtor from litigating its other cases, and by serious medical challenges faced by Mr. Chittur. Debtor has over 100 cases with potential for recovery of significant attorneys' fees and expenses. The Funds are needed for working capital of the firm, and will be used to work the cases and generate revenue, which will permit a viable reorganization plan. Accordingly, the cross-motion should be granted as sought, and the Debtor should be granted such other and further relief as is just and proper under the circumstances.

Dated:       August 4, 2016

**Shafferman & Feldman LLP**

Sd/-

By: Joel M. Shafferman, Esq.
137 Fifth Avenue, 9th Floor
New York, New York 10010
Telephone (212) 509-1802
Fax (212) 509-1831
Email: joel@shafeldlaw.com

Attorneys for Debtor

*Of Counsel:*
Krishnan Chittur, Esq.
Andrey Strutinskiy, Esq.

7