UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

In Re:

**CHITTUR & ASSOCIATES, PC,**

               Debtor.

------------------------------------------------------------X

**Hearing Date & Time**
**February 13, 2018, 10 a.m.**

**Chapter 11**

Case No.  16-22704 (RDD)

**DEBTOR'S RESPONSE TO MOTION FOR RELIEF FROM AUTOMATIC STAY**

Dated:     February 6, 2018

**Dahiya Law Offices, P.C.**
75 Maiden Lane Suite 506
New York, New York 10038

Tel: 212 766 8000
Attorneys for Debtor

OVERVIEW

Movants request retroactive annulment of the statutory stay, ostensibly to "liquidate" their inchoate "claim" exceeding $1.2 million for attorneys' fees and expenses in another Court, so that Movants could - if, as and when they prevail - file a "proof of claim" herein for *pro rata* recovery from Debtor's non-existent assets. This exercise in futility conceals Movants' true underlying purpose: a personal vendatta against Debtor and its principal Mr. Chittur.

Movants have been conducting a massive scam since mid-1990s victimizing small out-of-state businesses by fraudulently peddling $200 credit card machines for $5,000 to $20,000. The New York Attorney General and Fern Fisher, the Deputy Chief Administrative Judge, New York City Civil Courts, Administrative Authority of the Civil Court of the City of New York, have brought an unprecedented[1] lawsuit[2] against Movants (and all their affiliates) seeking disssolution and restitution. "Ex. A," Verified Petition (without exhibits) in NYAG Lawsuit. As Judge Fisher swore to under penalties of perjury:

> [Movants] have inundated the New York City Civil Court with filings against small business owners and employees based on leases . . . [Movants] have obtained thousands of default judgments against these individuals, typically amounting to thousands of of dollars.  [Movants] should not be allowed to profit from their

---

[1]We found no similar lawsuit *ever* brought by the NYAG, let alone the Supervising Administrative Judge of a court.

[2]*People of the State of New York, by Eric T. Schneiderman, Attorney General of the State of New York; and Fern A. Fisher, Deputy Chief Administrative Judge for New York City Courts and Administrative Authority of the Civil Court of The City of New York, v. Northern Leasing Systems, Inc., et al*, I. No. 450460/2016 (N.Y. Sup. N.Y. Co.) ("NYAG Lawsuit").

<u>deceptive practices and continue to flood the New York courts with baseless filings.</u>

"Ex. B," Affidavit of Fern Fisher, dated April 7, 2016, filed as <u>NYSCEF Doc. No. 120</u>. in NYAG Lawsuit.

Debtor is the <u>only</u>[3] law firm that stood up to Movants, relentlessly protecting the out-of-State victims of Movants' scam,[4] and even obtained a jury verdict of $1.125 million, which verdict was upheld on appeal with reduced damages. *Northern Leasing Systems, Inc., v. Kollars,* 61 N.Y.S.3d 191 ((N.Y. App. Term. 2017).[5] The conclusion is ineluctable that Movants' true purpose is to intimidate Debtor and its principal Mr. Chittur into silence so that their highly lucrative scam, which has raked in hundreds of millions of dollars over the past decade, continues unhindered. The instant meritless motion is part of that intimidatory tactic.[6]

---

[3]Transaction expenses of long-distance litigation precludes lawyer interest in these lawsuits for relatively small amounts, many of them for the Small Claims Part. For example, at issue in the *Ritchie* action underlying Movants' motion was Movants' bogus NYCCC lawsuit against California resident Ms. Patricia Ritchie for $2,203.20 based on a forged lease. Not an attractive proposition for most lawyers, especially given Movants' strenuous, no-holds barred, intimidatory tactics by to keep their scam going.

[4]*See., e.g., Pludeman v. N. Leasing Sys., Inc.*, 10 N.Y.3d 486 (2008); *Aldrich v. N. Leasing Sys., Inc.*, 7 N.Y.S.3d 121 (1st Dep't 2015) *Northern Leasing Systems, Inc., v. Alipour*, 58 Misc. 3d 149(A) (N.Y. App. Term. 2018); *MBF Leasing LLC, v. Goodwin*, 57 Misc.3d 143 (A) (N.Y. App. Term. 2017); *MBF Leasing LLC, v. Han*, 57 Misc 3d 143(A) (N.Y. App. Term. 2017); *Northern Leasing Systems, Inc., v. Amedeo*, 63 N.Y.S.3d 306 (N.Y. App. Term 2017); *Northern Leasing Systems, Inc. v. French*, 48 Misc. 3d 43 (N.Y. App. Term. 2015).

[5]*See also Serin v. N. Leasing Sys., Inc.*, 501 F. App'x 39 (2d Cir. 2012); *Aghaeepour v. N. Leasing Sys., Inc.*, 2015 WL 7758894 (S.D.N.Y. Dec. 1, 2015), *order corrected on denial of reconsideration*, 2016 WL 828130 (S.D.N.Y. Feb. 25, 2016)

[6]Movants' meritless objection to Debtor's dismissal motion, dkt. 143, is of a piece with this intimidatory tactic. Movants question Debtor's disbursement of $380,000 received in the *Kollars* settlement in September 2017. A substantial part of that was

Movants' motion - quite apart from containing several misstatement of facts - contradicts the letter and spirit of the Bankruptcy Code. Annulment of stay is reserved for "compelling" cases, and the power to annul is exercised "sparingly." Movants do not even *attempt* to meet that criteria for annulment here, let alone retroactive annulment. Their motion should be denied, and the Debtor should be awarded costs and attorneys' fees against Movants.

FACTUAL BACKGROUND

While it is not necessary for present purposes to resolve factual misstatements in Movant's motion, it is necessary to correct the record. The substance of Movant's allegation, dkt. 141, at 4¶9 ("MM" or Movants' Motion), is utterly false and misleading. The factual background of *Ritchie* - and thousands of other similar lawsuits - is appropriately summarized in the NYAG Lawsuit:

> [Movants] ensnare individuals, many of whom are small, unsophisticated business owners, in void, invalid and/or never-ending equipment finance lease agreements, primarily for credit card processing equipment. They do so by, *inter alia*, (a) misrepresenting the terms of the lease such as savings that do not materialize; (b) packing their leases with numerous one-sided and onerous terms that are hidden in dense and difficult-to-read text; and (c) relying on leases that consumers deny signing or that they claim have been forged, or that contain one or more materials that were altered after signing.

"Ex. B," at 2¶2.

Ms. Ritchie, a California resident, was one such victim. Movants sued her in the NYCCC for $2,203.20 based on a forged "lease." The "lease" annexed to that lawsuit was

---

client funds.. Moreover, Debtor had accrued post-petition, unpaid liabilities of $29,243.93 per month from May 24, 2016, or $467,902.90 by August 2017. Debtor will address the disbursement in filings responsive to that objection.

obviously forged even to the naked eye, and based on Debtor's knowledge of Movant's pattern of collecting tribute through fraudulent lawsuits, which evidence was unearthed in some of 200 such cases that Debtor has handled, Debtor brought the *Ritchie* action for fraud, and violations of RICO and FCRA/NYFCRA and Section 349, GBL.  <u>One</u> allegation underlying the fraud claims was that Movants had knowingly sued Ms. Ritchie in NYCCC based on a forged lease.

Movants now assert that their *Ritchie* sanctions motion was based on Debtor's "preparation and filing of numerous pleadings *[- plural -]* containing allegations *[- plural -]* of 'fact' for which there was no evidentiary support," and "continued advocacy of those false allegations *[- plural -]* even after [Debtor] signed a response to a notice to admit" admitting the "allegations *[- plural -]* were false, and after Ms. Ritchie gave deposition testimony in which she also admitted that they were false."  MM4¶9.

Movants' own *Ritchie* sanctions motion reveals that this assertion is Trumpspeak - an outright falsity.

In fact, the <u>only</u> incorrect allegation - singular - in *Ritchie* was in the Second Amended Complaint (<u>one</u> pleading - singular) was that Ms. Ritchie <u>herself</u> told Movants of the forgery before they sued her in NYCCC.  That was an inadvertent error, which - as Movants concede - Ms. Ritchie (who had reviewed the *Ritchie* complaint prior to filing) and Debtor readily conceded in response to a notice to admit.  If, as Movants contend, the entire *Ritchie* lawsuit was founded upon that one error, Movants do not explain why they didn't readily seek/demand dismissal <u>immediately</u> upon receipt of the concession. <u>Instead, Movants had at least sixteen of the highest paid lawyers in the United States from two major Manhattan law firms defending Movants, billing at rates upto $1,250</u>

per hour and running up a bill of at least $1.2 million (and, with the instant motion, still counting).[7] It is of course, not the office of this proceeding to comment on the *Ritchie* court's opinion. But notably, *Ritchie* stands in isolated contrast to scores of other cases adjudicating substantially similar claims against Movants. *See, e.g.,* NYAG Lawsuit, and other cases cited above and in *Westlaw*. As the *Kollars* Court commented while awarding Debtor's attorneys' fees after prevailing on a substantially similar claim:

> . . [A]fter a decade of contentious litigation, the unique legal and factual issues involved in this case, including the fact that Defendants prevailed on what could possibly be the first jury trial of this kind in this court is commendable.

"Ex. C," Order of July 13, 2016, in *Northern Leasing Systems, Inc., v. Kollars*, I. No. 14350/07 (N.Y. City Civ. Ct. N.Y. Co.).

Further, Movants themselves conceded in *Ritchie* that the lease underlying their NYCCC action against Ms. Ritchie was forged. Thus, the only issue was whether Movants knew of the forgery before bringing that NYCCC action. The answer is clearly "yes," since, Movants' own records conclusively demonstrated substitution of the signature pages, with the forged pages, in the faxed document they received from their agent in California.[8]

---

[7] While Movants also disputed Ms. Ritchie's claims under the FCRA and NYFCRA on legal grounds, Debtor has consistently prevailed in several other cases on that very argument. Hence, any argument that those claims are "frivolous" is itself frivolous.

[8] Equally significant, long after Ms. Ritchie established the forgery beyond question - even submitting an expert report to that effect - Movants asserted counterclaims in federal court on that very forged lease. Thus, assuming *arguendo* that Movants didn't know of the forgery before the NYCCC action, their conduct in *Ritchie* itself established Movants' pattern and practice of commencing/prosecuting fraudulent lawsuits.

These facts - which were not at issue, and hence, not explained, in briefing on the motion underlying the *Ritchie* opinion - were disclosed in evidentiary hearings on Movants' sanctions motion on October 30, 2017. Movants, discombobulated by the indisputable evidence, commenced scampering for dirt on Debtor: As Movants concede, two days after that hearing (November 1, 2018), one of the Movants, Joseph Sussman, did a "search" for cases involving Debtor and found this bankruptcy filing, MM, at 5¶17. Movants then waited for another 1 ½ months before they had the *Ritchie* proceedings adjourned under pretext of this bankruptcy.

The conclusion is ineluctable that Movants, seeking to protect the ill-gotten tens of millions of dollars from their fraudulent scheme, just seek to (a) bully Debtor by saddling Debtor with continued unwarranted proceedings; and (b) keep Debtor tied up with meritless motions to prevent Debtor - now a one-man show - from prosecuting the 100 plus lawsuits against Movants. In fact, Movants have started filing motions by the boatloads in those cases based on Debtor's alleged discovery defaults. This meritless motion is but part of this strategy - yet another abuse of the judicial process by Movants.

## ARGUMENT

I.  Movants' Motion Is Baseless, and No Retroactive Annulment Is Warranted

While this Court has the power to annul the automatic stay retroactively, 11 U.S.C. § 362(d), it is a power to be rarely exercised. As the First Circuit held,

> a <u>rarely dispensed remedy like retroactive relief from the automatic stay must rest on a set of facts that is both unusual and unusually compelling.</u> The case law echoes this conclusion. *See Mataya v. Kissinger (In re Kissinger )*, 72 F.3d 107, 109 (9th Cir.1995) (stating that courts should indulge retroactive annulment only in extreme circumstances); *In re Pulley*, 196 B.R. 502, 504 (Bankr. W.D.Ark.1996) (similar)

*Soares v. Brockton Credit Union (In re Soares),* 107 F.3d 969, 978 (1st Cir. 1997).[9]

*Accord, In re WorldCom, Inc.,* 325 B.R. 511, 521 (Bankr.S.D.N.Y. 2005). Thus, retroactive relief is available "only sparingly and in compelling circumstances." *In re Killmer*, 513 B.R. 41, 49 (Bankr. S.D.N.Y. 2014). *Accord, In re Cunningham*, 506 B.R. 334 (Bankr. E.D.N.Y. 2014). <u>Movants' present no facts that are "unusual" or "unusually compelling."</u>

Besides, "The burden of proof on a motion to lift or modify the automatic stay initially rests with the movant." *In re Chittur & Assocs., P.C.,* 2017 WL 4621116, at *5 (S.D.N.Y. Oct. 16, 2017); 11 U.S.C. § 362(d)(1). "If the movant fails to make an initial showing of cause, however, the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1285 (2nd Cir. 1990). <u>Movants do not come close to bearing this burden of proof.</u> They prove nothing more than that they <u>might</u> have a potential claim.

Further, the Court should consider the following factors when determining whether to annul the stay:

> (1) if the creditor had actual or constructive knowledge of the bankruptcy filing and, therefore, of the stay, (2) if the debtor has acted in bad faith, (3) if there was equity in the property of the estate, (4) if the property was necessary for an effective reorganization, (5) if grounds for relief from the stay existed and a motion, if filed, would likely have been granted prior to the automatic stay violation, (6) if failure to grant retroactive relief would cause unnecessary expense to the creditor, and (7) if the creditor has detrimentally changed its position on the basis of the action taken.

---

[9] All emphasis in quotations are supplied unless specified otherwise.

*In re Killmer*, 513 B.R. 41, 49–50 (Bankr. S.D.N.Y. 2014) (citations omitted). *Accord, In re Cunningham*, 506 B.R. 334, 343 (Bankr. E.D.N.Y. 2014). Movants do not address this at all.

Each of these factors favors Debtor. Movants are not "creditors" but merely "potential creditors" - at best. While it is difficult to believe that Movants, with their army of lawyers and support staff who ran up a bill exceeding $1.2 million attempting to silence Debtor were unaware of this two-year old bankruptcy, their 2 ½ month delay in filing this motion (Jan. 24, 2018) after they concededly knew of this bankruptcy (Nov. 1, 2017) is telling.

Movants present no evidence of Debtor's bad faith; if anything, their delay in filing this Motion evidences <u>Movants'</u> bad faith. Indeed, Movants' argument accusing Debtor of bad faith is so bizarre that it merits repetition:

> The Debtor wanted to see the District Court's decision on the Sanctions Motion and, if the outcome was unfavorable, play the "trump card" of the automatic stay and ask this Court that the District Court's judgment be declared void.

MM9¶29. In other words, say Movants, Debtor's only employee (Mr. Chittur) spent tons of his own time, researching and briefing Movants' 16-attorney motion and court filings, and personally attending two evidentiary hearings in *Ritchie* - all at a time when Mr. Chittur has been strenuously working with his sparse energy due to medical conditions to stave off defaults in the scores of cases that Movants suddenly chose to proceed aggressively. According to Movants' contorted logic, Debtor indulged in this humongous waste of time and resources to have the pleasure of watching the District Court could enter judgment against Debtor, and then having the further pleasure of

8

wasting even more time and resources for "ask[ing] this Court" to declare that judgment void. Weird, put bluntly.

This is apart from the plethora of baseless assumptions about what Debtor "wanted", the District Court entering judgment against Debtor, and then Debtor wasting further resources to nullify an unexecutable judgment. It merits repetition that long before Movants brought this Motion, Debtor had sought dismissal of this bankruptcy based on lack of assets and intent to dissolve.

Re. *Kilmer* factors 3 and 4, Debtor's Estate has no equity, and is on the verge of dissolution. Re. 5, no grounds for relief whatsoever exist or existed at any time, and clearly a motion, if filed would not have been granted prior to the automatic stay violation. Movants' bald assertion to the contrary, MM9¶29, is inconsequential. Factor (6) is inapplicable since Movants are not "creditors" at all; in any event, denial of retroactive relief would actually save money for everyone, including Movants themselves. And re 7, Movants do not even claim that they changed any position on the basis of anything done by Debtor.

II.    No "Modification" Is Warranted

Movants draw a distinction between "modifying" the automatic stay, and "annulling" it, MM6, 8. But even that distinction does not help Movants. As seen above, no basis exists for retroactive annulment. So also, no question exists of "modifying" the stay, because with the grant of Debtor's pending dismissal motion, the stay will lapse. "By the terms of Code § 362(c), the automatic stay of § 362(a) terminates upon the dismissal of a bankruptcy case." 7 *Norton Bankr. L. & Prac. 3d, Effects of dismissal*

9

(Code § 349) § 148:6; 11 U.S.C.A. § 362(c)(2)(B); *In re Murphy*, 493 B.R. 576 (Bankr. D. Colo. 2013); *In re Crump*, 467 B.R. 532 (Bankr. M.D. Ga. 2010).

That apart, Movants wrongly cite twelve factors as having been approved by the Second Circuit "to lift the stay for prepetition litigation," MM6¶22 (*citing In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990)). Movants seek retroactive annulment <u>not</u> for "prepetition litigation" but for a belated post-petition litigation launched for harassment and intimidation, a criminal waste of Debtor's and the Court's time and resources.[10]

## CONCLUSION

Movants' motion is meritless since Debtor is on the verge of dissolution due to lack of resources. The Court should deny Movants' motion as an unwarranted waste of time and resources, and impose sanctions upon Movants for frivolous litigation.

Dated:     February 6, 2018                **Dahiya Law Offices, P.C.**

                                            Sd/-
                                            _____
                                            Karamvir Dahiya, Esq.
                                            75 Maiden Lane Suite 506
                                            New York, New York 10038

                                            Tel: 212 766 8000
                                            Attorneys for Debtor

---

[10] Movants' analysis of the *Curtis* factors, MM9¶29, verges on the frivolous. To the extent it has any relevance at all, such as the meritless allegation of "bad faith, it has already been discussed above.

## VERIFICATION

I declare under penalties of perjury that the factual contents in this Response are true to my own knowledge.

Dated:        February 6, 2018                                    Sd/-

                                                                  _____
                                                                  Krishnan S. Chittur, Esq.