UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

In Re:

**CHITTUR & ASSOCIATES, PC,**

      Debtor.

-------------------------------------------------------------X

**Hearing Date & Time**
**February 13, 2018, 10 a.m.**

**Chapter 11**

Case No.  16-22704 (RDD)

# DEBTOR'S REPLY MEMO IN FURTHER SUPPORT OF
# DEBTOR'S MOTION FOR VOLUNTARY DISMISSAL

Dated:  February 11, 2018

**Dahiya Law Offices, LLC**

*Attorneys for Debtor*

 75 Maiden Lane Suite 506
New York, New York 10038

Tel: 212 766 8000

1

PRELIMINARY STATEMENT

Debtor moves for voluntary dismissal of this Chapter 11 bankruptcy proceeding on the ground that Debtor has no assets and no viable survival plan. Landlords[1], adopting objections raised by Potential Judgment Debtors ("PJDs")[2], challenge dismissal and seek conversion to Chapter 7 on the ground that Debtor's receipt of $380,937 in September 2017 is unaccounted for. The objection is meritless.

Debtor's disbursement of the $380,937 is no mystery: after giving Debtor's client his share, the balance partially met Debtor's post-petition unpaid liabilities accrued in the ordinary course of business. This is clear from the pre-receipt operating statements that were already on the Court file. Throughout this bankruptcy, Debtor's operating statements were never timely filed due to overwork and lack of resources; hence, Debtor's delay in filing these statements for September 2017 - January 2018 is not unusual at all; "the untimely filing of the MORs has not been considered by the Court as a ground to convert," *In re Adamo*, 2016 WL 859349, at *18 (Bankr. E.D.N.Y. Mar. 4, 2016). Since the inception of this bankruptcy - and even for sometime before - Debtor's liabilities *always* exceeded revenues. The September 2017 receipt still left Debtor in the red, and since then, Debtor has been simply accruing liabilities. Landlords provide no evidence to the contrary. Accordingly, in the "best interests" of Debtor and creditors,

---

[1] APF 286 MAD LLC, GAN 286 MADISON LLC, AND 286 Madison Associates, LLC.

[2] Northern Leasing Systems, Inc., Lease Finance Group, LLC, Ricardo Brown, Robert Taylor, Joseph I. Sussman, Joseph I. Sussman, P.C., and Jay Cohen.

1

the petition should be dismissed without further waste of time and resources in unproductive procedural gymnastics.

The sole criterion for Debtor's instant motion is the "best interests" of Debtor and creditors. PJDs, who are counterclaim defendants in over a 100 cases being prosecuted by Debtor (including two class actions), face significant liabilities. PJDs' interests are irreconcilable with Debtor's and creditor's "best interests". That apart, PJDs have suffered no "injury". Thus, PJDs have no standing to be heard on this motion. Moreover, the conclusion is ineluctable that PJDs' filings herein are solely to benefit PJDs by tying up Debtor in responding to such meritless arguments so that Debtor cannot prosecute counterclaims against PJD diligently.

## STATEMENT OF FACTS

Debtor incorporates the contents of the accompanying Chittur affirmation as if the same were set forth *in extenso* here.

## ARGUMENT

I.  The Applicable Standards

Debtor movant has the burden of demonstrating cause for dismissal or conversion. *In re Loco Realty Corp.*, 2009 WL 2883050, at *2 (Bankr.S.D.N.Y. June, 25 2009) (Gonzalez, J.). "Once the movant has established cause, the burden shifts to the respondent to demonstrate by evidence the unusual circumstances that establish that dismissal or conversion is not in the best interests of creditors and the estate." *In re MF Glob. Holdings Ltd.*, 465 B.R. 736, 742 (Bankr. S.D.N.Y. 2012) (*quoting 7 Collier on Bankruptcy* ¶ 1112.05[1]).

2

Under 11 U.S.C. § 1112(b), "the court shall convert a chapter 11 case to a chapter 7 case, or dismiss a chapter 11 case, whichever is in the best interests of creditors and the estate, for 'cause.'" *In re Ancona*, 2016 WL 7868696, at *3 (Bankr. S.D.N.Y. Nov. 30, 2016). Conversion to chapter 7 can occur only "upon the request of a party in interest, after notice and hearing, and for cause." *In re Tiana Queen Motel, Inc.*, 749 F.2d 146, 148 (2nd Cir. 1984).

> The purpose of § 1112(b) is not to test a debtor's good faith; it is to provide relief where the debtor's efforts, however heroic, have proven inadequate to the task of reorganizing his affairs effectively within a reasonable amount of time.

*In re Tiana Queen Motel, Inc.*, 749 F.2d 146, 152 (2d Cir. 1984).

Thus, dismissal is proper where "conversion would only increase the administrative expenses to the estates," *In re MF Glob. Holdings Ltd.*, 465 B.R. 736, 742 (Bankr. S.D.N.Y. 2012).

II.   PJDs Are Not "Parties in Interest" On this Motion, and Hence, They Have No Standing, And Their Objections Should be Stricken

"Party in interest" in bankruptcy depends upon the purposes of the Bankruptcy Code. *Roslyn Savings Bank v. Comcoach Corp. (In re Comcoach Corp.)*, 698 F.2d 571, 573 (2d Cir.1983).

> Section 1109(b) of the Bankruptcy Code provides that a party in interest may appear and be heard on any issue in the case. This provision, however, <u>does not confer standing in the absence of a legally protected interest affected by the bankruptcy proceeding</u>, *In re James Wilson Assocs.*, 965 F.2d 160, 169 (7th Cir.1992); *In re Caldor, Inc.*, 193 B.R. 182, 186 (Bankr.S.D.N.Y.1996), and <u>the party asserting standing must show that he is a beneficiary of the bankruptcy provision that he invokes.</u> *In re James Wilson Assocs.*, 965 F.2d at 169; *In re Caldor, Inc.*, 193 B.R. at 186; *McLean Indus., Inc. v. Medical Laboratory Automation, Inc. (In re McLean Indus., Inc.)*, 96 B.R. 440, 444–45 (Bankr.S.D.N.Y.1989).

3

*In re Martin Paint Stores*, 199 B.R. 258, 263 (Bankr. S.D.N.Y. 1996), *aff'd sub nom. S. Blvd., Inc. v. Martin Paint Stores*, 207 B.R. 57 (S.D.N.Y. 1997).[3]  *Accord, In re Residential Capital, LLC*, 2013 WL 6698365, at *3 (Bankr. S.D.N.Y. Dec. 19, 2013), *aff'd,* 2015 WL 629416 (S.D.N.Y. Feb. 13, 2015) (same); *Matter of James Wilson Associates*, 965 F.2d 160 (7th Cir. 1992) (other limitations on standing, such as that claimant must be within class of intended beneficiaries of statute that he is relying on for his claim, not waived).

Bankruptcy's "core" purpose is to maximize the value of Debtor's estate, not minimize it in the interests of potential debtors of Debtor in bankruptcy.  *See, e.g., Lewis v. Blackman Plumbing Supply L.L.C.*, 51 F. Supp. 3d 289, 318 (S.D.N.Y.  2014); *In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 849 (Bankr. S.D.N.Y.1989).  Hence, a "party in interest" is reserved

> to the debtor or one who is a creditor of the estate, *In re Comcoach Corp.*, 698 F.2d at 573, or is able to assert an equitable claim against the estate.  *In re Ionosphere Clubs, Inc.*, 101 B.R. at 849.

*In re Martin Paint Stores*, 199 B.R. at 264.

PJDs are not creditors, they are potential debtors of Debtor.  Their "pecuniary interests" herein lie in crippling or destroying Debtor because if Debtor succeeds, PJDs would land up owing significant money to Debtor and Debtor's clients.  Thus, PJDs' interests are directly contrary to the Debtor's and creditor's interests.  The purpose of the Bankruptcy Code is not to protect such potential debtors of the Debtor in

---

[3]All emphasis in quotations are supplied.

bankruptcy. Quite the contrary; "a core aim of the Bankruptcy Code . . is to maximize the value of the assets and thereby maximize potential recovery to the creditors." *In re Old Carco LLC*, 538 B.R. 674, 682 (Bankr. S.D.N.Y. 2015) (*quoting Douglas v. Stamco*, 363 Fed.Appx. 100, 102–03 (2d Cir.2010). Since PJDs' interests are indisputably irreconcilable with the interests of Debtor and creditors, they cannot have standing herein.

III.   <u>The Bankruptcy Should Be Dismissed</u>

    A.   *Debtor Has No Resources, and No Viable Way to Survive*

The accompanying affirmation abundantly evidences that Debtor's unpaid post-petition liabilities now stand at $136,303 - after accounting for all post-petition revenues. Debtor has no prospect of any significant recovery in the foreseeable future. These liabilities are continually increasing as Debtor's monthly expenses run at $50,000. Debtor has been unable to obtain a financier for endless litigation as PJDs scorched-earth litigation tactics in every case, continually bombarding Debtor with unwarranted work.

Landlords seek conversion to Chapter 7, but they have failed to meet their burden to establish "cause." No reason whatsoever exists to suspect any bad faith, misconduct, or any improper transfer of assets, or indeed, any "cause." The record is totally devoid of any basis for even suspecting, let alone establishing, such "cause."

While Landlords proffer two fig-leafs for suspicion, neither survives scrutiny. First, Landlords point to Debtor's receipt of $380,937 in September 2017. But as explained in the accompanying Chittur Affirmation, Debtor's share of that receipt -

$230,937 - was insufficient to meet the unpaid post-petition liabilities <u>even at the time of that receipt</u>.

Second, Landlords point to Debtor's delay in filing operating statements since September 2017. But that delay is consistent with Debtor's pattern throughout the bankruptcy, attributable to overwork caused by PJDs and Debtor's lack of resources; Through this entire bankruptcy, Debtor has filed operating statements belatedly, with delays of upto seven (7) months. As detailed and illustrated in the accompanying Chittur Affirmation, these delays were inevitable since PJDs flooded Debtor with work, largely unwarranted motion and discovery practice. For example, apart from other discovery demands (such as document production, interrogatory responses, and deposition defense), no less than an incredible forty-nine (49) motions had to be attended to within about a month. While many of these motions were meritless and bound to be denied, they still required Debtor to carefully review the entire file of every underlying case, including all documents and proceedings, research of applicable law, and drafting and finalizing response papers, and requiring client communication for "affidavits of merit".

Equally important, neither Landlords nor anyone else has ever objected to Debtor's delay in operating statement filings at any time. Even as of today, neither Landlords nor anyone else has objected to a single entry in a single operating statement since May 2016. Thus, Debtor's untimely filings are no basis for suspicion; Debtor does not seek a discharge.

Hence, if anything, the untimely filings are "cause" for discharge, since they evidence Debtor's dwindling ability to comply with such requirements. *See, e.g., In re*

6

*Pittsfield Weaving Co.*, 393 B.R. 271 (Bankr. D. N.H. 2008) (bankruptcy court dismissed case, where "cause" was debtor's arrearage of $180,000 in unpaid postpetition taxes, tardiness in filing its monthly operating reports, failure to pay its monthly health insurance premiums, lack of a confirmable plan despite being in bankruptcy for two years, and insufficient capital to stay in business).

    B.    *Debtor Properly Paid Administrative Expenses In the Ordinary Course of Business*

        1.    The Applicable Law

A debtor-in-possession has "the flexibility to engage in ordinary transactions without unneeded oversight by creditors or the court," *In re Dana Corp.*, 358 B.R. 567, 580 (Bankr. S.D.N.Y. 2006) (*citing In re Crystal Apparel, Inc.*, 207 B.R. 406, 409 (S.D.N.Y.1997); 11 U.S.C.A. §§ 363(c),[4] 364(a). These administrative expenses "are not technically claims, but rather are liabilities of the estate entitled to priority over all other claims, except for superpriority claims and domestic support obligations." 1 *Bankruptcy Law Manual* §6:32 *Administrative expenses—Generally* (5th ed.). No super-priority claims *i.e.,* domestic support obligations and secured creditor claims, 11 U.S.C.A. § 507(a)(2) - do not exist here. Thus, administrative expenses have priority over all other claims. *Id.*

Significant considerations of public policy underpin such priority for administrative expenses: to encourage activities that will benefit the estate; to advance

---

[4]"If the business of the debtor is authorized to be operated under … this title and unless the court orders otherwise, the trustee may enter into transactions … in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1).

reorganization efforts which would be hampered by the necessity of advance payments for supplies to the estate; to compensate those injured by the estate; and to prevent unjust enrichment of the estate at the expense of its creditors. *Id.*[5]

Courts have generally applied a two-part test to determine whether an obligation is entitled to administrative expense status: that the expense (1) arose out of a

---

[5]*See also In re BCE West, L.P.*, 319 F.3d 1166 (9th Cir. 2003) (administrative expense priority encourages third parties to deal with the business that has filed for bankruptcy); *In re FBI Distribution Corp.*, 330 F.3d 36 (1st Cir. 2003) ("Congress recognized that granting first priority to administrative expenses would encourage creditor … to provide goods and services required for successful rehabilitation."); *In re Boston Regional Medical Center, Inc.*, 291 F.3d 111 (1st Cir. 2002) (priority of administrative expenses is necessary to induce potential contractors to do business with debtor-in-possession); *In re Colortex Industries, Inc.*, 19 F.3d 1371 (11th Cir. 1994) (goals of administrative expense priority are to maximize estate and encourage ongoing business with third parties, and thus reorganization); *In re Mid Region Petroleum, Inc.*, 1 F.3d 1130 (10th Cir. 1993) (policy behind priority for administrative expenses in Chapter 11 cases is to encourage creditors to supply necessary resources to debtors postpetition); *In re HNRC Dissolution Co.*, 396 B.R. 461 (B.A.P. 6th Cir. 2008) (purpose of administrative expense provision is to facilitate continued operation of business of debtor-in-possession to encourage third parties to provide them with necessary goods and services that will enable maximization of value for creditors); *In re Malden Mills Industries, Inc.*, 303 B.R. 688 (B.A.P. 1st Cir. 2004) (administrative expenses include costs ordinarily incident to preservation of business and are not limited to costs without which rehabilitation would be impossible); *In re American Coastal Energy Inc.*, 399 B.R. 805 (Bankr. S.D. Tex. 2009) (underlying purpose of administrative expense priority is to encourage postpetition conduct that will assist reorganization or organize the estate's assets in orderly fashion for efficient sale); *In re Powermate Holding Corp.*, 394 B.R. 765 (Bankr. D. Del. 2008) (rationale for administrative expense priority is to encourage lenders and others to continue or commence doing business with the debtor); *In re Diomed Inc.*, 394 B.R. 260, 266 (Bankr. D. Mass. 2008) ("one of the primary purposes of § 503(b)(1)(A) is to encourage parties to do business with a debtor in possession or trustee …"); *In re Liberty Fibers Corp.*, 383 B.R. 713 (Bankr. E.D. Tenn. 2008) (reason for administrative expense priority is to encourage provision of goods and services to the estate and to compensate those who expend resources attempting to assist or rehabilitate estate); *In re Enron Corp.*, 279 B.R. 79 (Bankr. S.D. N.Y. 2002) (administrative expense priority is based on premise that operation of business by debtor-in-possession benefits creditors); *In re Canton Jubilee, Inc.*, 253 B.R. 770 (Bankr. E.D. Tex. 2000) (justification for administrative expense priority is the payment for expenses to produce distribution).

transaction with the debtor-in-possession; and (2) conferred a benefit on the estate.  1 *Bankruptcy Law Manual* §6:32 *Administrative expenses—Generally* (5th ed.).[6]

Thus, the expense must (a) arise from a "transaction" that occurred after the filing of a bankruptcy petition; and (b) the payee provide consideration that was "beneficial to the debtor-in-possession in the operation of [its] business." *Peters v. Pikes Peak Musicians Ass'n.*, 462 F.3d 1265, 1272 (10th Cir. 2006) (citing cases).  *Accord, In re Roth Am., Inc.*, 975 F.2d 949, 958 (3d Cir. 1992).[7]

For example, *In re Dana Corp.*, 358 B.R. at 580, the Court approved compensation under a short-term incentive plan as "within the ordinary course of Debtors' business," observing

> [S]ection 503(c) was not intended to foreclose a Chapter 11 debtor from reasonably compensating employees, including 'insiders,' for their contribution to the debtors reorganization.

---

[6]*Citing In re FBI Distribution Corp.*, 330 F.3d 36 (1st Cir. 2003) (court applied the two-part *Mammoth Mart* test for determining whether former executive's claims qualified for administrative expense status); *In re Plymouth Rubber Co., Inc.*, 336 B.R. 16 (Bankr. D. Mass. 2005) (finding an administrative expense under the two-part *Mammoth Mart* test); *In re WorldCom, Inc.*, 308 B.R. 157 (Bankr. S.D. N.Y. 2004) (applying the *Mammoth Mart* test); *In re Dornier Aviation (North America), Inc.*, 2002 WL 31999222 (Bankr. E.D. Va. 2002) (applying the *Mammoth Mart* test); *In re Mammoth Mart, Inc.*, 536 F.2d 950, 954 (1st Cir. 1976) (the court articulated a two-part test for determining administrative expense status under the Bankruptcy Act).

[7]"Either the providing of services under its contracts with the Debtor, or its standing ready, willing and able to provide those services, constitutes a transaction between Enterasys and the debtor-in-possession that benefitted the Debtor in the operation of its business. Therefore, we affirm the bankruptcy court's allowance of the amount of $40,340.20 to Enterasys as a Chapter 11 administrative expense, pursuant to 11 U.S.C. §§ 503(b) and 507(a)(2)." *In re Native Am. Sys., Inc.*, 351 B.R. 135, 142 (10th Cir. BAP (Colo.) 2006)

9

*In re Dana Corp.*, 358 B.R. 567, 575 (Bankr. S.D.N.Y. 2006). *Accord, In re AMR Corp.*, 497 B.R. 690, 697 n. 7 (Bankr. S.D.N.Y. 2013).

        2.    Debtor's Liabilities Were Administrative Expenses Properly Incurred

No question exists that both conditions for administrative expense status exist here: they were incurred post-petition, in a transaction with the Debtor, for valuable services/consideration provided by the payee, and for the benefit of the Debtor's estate. Debtor's operating statements reflect that all the expenses incurred were in the ordinary course of business: rent, postage and delivery, office expenses, Westlaw subscriptions, professional books, licenses and permits, and employee compensation.

From the inception of this bankruptcy (May 24, 2016) until today, Debtor's expenses have been substantially the same, or in the same range. While the bulk of these liabilities were to third parties, the compensation to Debtor's principal was more than reasonable, considering that courts have found $475 per hour to be a "reasonable" billing rate for him, *see* dkt. 146-3, at 25.

Most important, for the seventeen months' operating expenses that have been on file for between four to fifteen months, not a single objection has been raised to any expense.[8]

---

[8] While some of the monthly operating statements did not reflect the unpaid but accrued liability for that month, such liability was indisputably accrued: Debtor continued its operations, phone and utility bills had to be paid, employee(s) did work, etc.

Thus, all the liabilities incurred by Debtor were proper, and no cause exists for insisting that Debtor, the Court, or the U.S. trustee waste further resources through a conversion into a chapter 7 liquidation.

## CONCLUSION

Debtor's motion for voluntary dismissal should be granted in its entirety. Further, sanctions should be imposed on the PJDs, and Debtor should be awarded its attorneys' fees and expenses incurred in connection with this motion.

Dated:     February 11, 2018                              **Dahiya Law Offices, LLC**

                                                         Sd/-
                                                         _____
                                                         Karamvir Dahiya, Esq.
                                                         75 Maiden Lane Suite 506
                                                         New York, New York 10038

                                                         Tel: 212 766 8000
                                                         Attorneys for Debtor